Entered on Docket October 11, 2017

**Below is a Memorandum Decision of the Court.**

*/s/ Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

___

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | |
|---|---|
| CLARENCE G. MUNCE, | Case No. 13-45569 |
| Debtor. | **MEMORANDUM DECISION** (Not for Publication) |

This matter came for hearing before the Court on September 28, 2017, on the Trustee's Final Report. Creditors Kristy Rickey, Kelley Cavar, and the Estate of Gerald Munce (Creditors) filed an objection to the request for compensation by the Chapter 7 Trustee (Trustee) in accordance with 11 U.S.C. § 326.[1] The Trustee and the attorney for the Creditors appeared at the hearing. The Court requested additional pleadings be filed by the Trustee by close of business on September 28, 2017, and the Creditors by October 2, 2017. The Court took the matter under advisement. Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows.

---
[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 1

This case has a long procedural history that spans several forums. On June 21, 2008, Clarence Munce (Debtor), who suffered from the early stages of dementia, killed his son Gerald Munce. Gerald's daughters, Kelley Cava and Kristy Rickey, are the co-executors of the Estate of Gerald Munce. That same year, the Debtor was charged with first degree homicide. On December 30, 2008, the Debtor was found incompetent to stand trial and the criminal charges were dismissed.

On July 11, 2008, the Creditors filed claims against the Debtor in Pierce County Superior Court under Washington State's wrongful death and survival statutes (Superior Court Action). Judgment was entered against the Debtor in the total amount of $2,048,975.94, on August 8, 2013 (Judgment). The Debtor appealed.

The Debtor filed bankruptcy under chapter 7, title 11 on August 29, 2013. On October 1, 2013, the Washington State Court of Appeals stayed the appellate action pending the bankruptcy proceeding. The Debtor died on October 4, 2013. The Debtor's discharge was entered on December 10, 2013.

On October 10, 2013, the Trustee objected to the Debtor's exemptions. On that same date, the Trustee filed an application for a Fed. R. Bankr. P. 2004 examination of Dennis Cline, the Debtor's nephew and attorney in fact. An order granting this request was entered on October 11, 2013.

An order authorizing the employment of Orlandini & Waldron, P.S. as attorney for the bankruptcy estate (Estate) was entered on October 15, 2013.

The § 341 meeting of creditors was held on October 7, 2013, and on October 29, 2013, a notice to file proofs of claim was entered, setting a bar date of January 28, 2014.

On November 15, 2013, the Creditors filed a motion for relief from stay to pursue their claims against the Debtor to the extent of any insurance proceeds that were not part of the Estate. Initially, the Debtor submitted an agreed order on relief from stay, which was later vacated. An order granting limited relief from stay was subsequently entered on January 10, 2014.

On December 5, 2013, the Debtor filed a motion to allow an exemption of $214,603.56 as exempt retirement funds. On December 12, 2013, an order was entered granting the Trustee's application to employ a certified public accountant. The Trustee objected to the Debtor's motion to allow exemption, and following several hearings, the Trustee filed a motion to approve a compromise between the Debtor and the Trustee on the exemption issue. Under the terms of the compromise, the Debtor's exemptions would be approved in the amount of $133,671, of which $83,580 was Labor & Industries (L&I) disability funds, to be disbursed to the Debtor's probate proceeding. The Creditors never objected to the Debtor's motion to allow exemption, but objected to the Trustee's motion to approve a compromise, arguing that none of the L&I proceeds were exempt. At a hearing held May 15, 2014, the Court[2] denied the Trustee's motion to approve the compromise, but also ruled that the Creditor's objection to the L&I funds exemption was untimely. The Court continued the matter to May 29, 2014, for further briefing on the Trustee's objection to the Debtor's exemption in the L&I funds. On May 29, 2014, the Court entered an order denying the Debtor's exemption in the L&I funds. On July 9, 2014, an order was entered allowing the Debtor's exemption in social security deposits and Teamsters

---

[2] Use of the term "Court" refers to both the current judge, Judge Mary Jo Heston, and the judge who presided over the Debtor's bankruptcy case through December 31, 2016, Judge Paul B. Snyder.

MEMORANDUM DECISION - 3

pension deposits in the total amount of $50,091, to be turned over to the personal representative of the Debtor's probate estate.

On September 18, 2014, the Trustee filed an application to approve interim fees for the Trustee's attorney in the amount of $25,760 for services rendered to the Estate from the date of filing to September 18, 2014. No objections were filed, and an order was entered approving the application on October 21, 2014.

On November 5, 2013, the Creditors filed Proof of Claim No. 1 in the amount of $2,048,975.94 based on the Superior Court Judgment. On October 27, 2015, the Washington State Court of Appeals reversed the Judgment and remanded it back to Superior Court to determine damages. Due to the reversal, the Trustee applied for and obtained an order authorizing the employment of Michael McKasy as a consultant and expert for the Estate to value the wrongful death proof of claim filed by the Creditors. According to the application, because of "such reversal, and other competing interests in this proceeding, the Trustee believes this now unliquidated claim will require this Court to determine the amount of the claim for purposes of this bankruptcy." Appl. to Employ 2:4-6, ECF No. 170. The application was approved on November 25, 2015. The Trustee further filed an objection to the Creditors' claim on December 1, 2015. Both the Debtor and Creditors filed a response. The Court ruled at the January 7, 2016 hearing that the bankruptcy court lacked jurisdiction to determine the amount of the Creditors' claim. On the Debtor's motion, a supplemental order was entered on January 28, 2016, modifying the stay order previously entered at ECF No. 61, to allow the matter to proceed on a determination of damages in Superior Court and thereby liquidate the Creditors' claim. The Trustee, and the Debtor's and Creditors' counsel signed off on this order. Suppl. Order Modifying Stay, ECF No. 184.

On February 24, 2016, the Trustee filed an application to approve the interim fees for expert witness McKasy. An application to approve the interim fees of the Trustee's CPA was filed on March 1, 2016. Both applications were approved without objection on April 1, 2016. An application to approve compensation of special counsel Andrews & Arbenz, PLLC was filed on March 15, 2016, and approved without objection on April 26, 2016.

On July 13, 2016, the Creditors moved for an order requiring the Trustee to release any information gathered by his CPA or the personal injury valuation consultant, McKasy. The Creditors also requested that the Court order mediation of this matter. At the hearing held on July 28, 2016, counsel for the Creditors[3] represented to the Court that the Trustee had turned over some of the documents requested, and he asked that the Court set over the motion to a later date. With respect to the mediation issue, the Court agreed that it could not force parties into mediation without their consent. The Court ruled that the Creditors should file a new motion specifying what information they still sought and addressing the mediation concerns. On August 1, 2016, the Court entered an order denying the Creditors' motion without prejudice. There is no record of any additional motion filed by the Creditors seeking information from the Trustee.

On September 9, 2016, the Trustee filed a motion to clarify the lift of stay order entered at ECF No. 184. Trial was scheduled in Superior Court for November 2016, and an "issue arose as to whether the Superior Court had clear authority to determine damages and if so, would such determination become the then allowed bankruptcy claim amount for Claim #1." Mot. to Clarify 2:11-13, ECF No. 214. An Order Clarifying Lift of Stay and Order Allowing Claim #1 was entered without objection on October 4, 2016, confirming that the Creditors' claim would be allowed in the amount as determined in the Superior Court Action.

---

[3] Mr. Shillito appeared for the Creditors in the absence of Mr. Barcus.

The Trustee filed a second application for interim attorney's fees (Second Application) on November 2, 2016, seeking approval of $12,950 for services rendered from September 19, 2014, through October 31, 2016. The Creditors objected, arguing that the Trustee had "willfully failed to diligently fulfill his statutory and fiduciary duties to expeditiously close the bankruptcy estate." Obj. 4:16-17, ECF No. 224. The Creditors further alleged that the Trustee failed to investigate and pursue reasonably available claims, including potential malpractice claims against one or more of the attorneys representing the Debtor in the Superior Court Action and fees paid by the Debtor for the services of a litigation guardian ad litem.

The Court orally granted the application at the December 15, 2016 hearing. The Court subsequently entered an Order Granting Second Application for Payment of Interim Attorney's Fees on December 20, 2016. See ECF No. 229. In this Order, the Court indicates that the purpose was to "further review this matter" and prepare an "order incorporating its decision with additional findings." Order Approving 2nd Appl. 2:1-2, ECF No. 229. The Court concluded that none of the multiple objections raised by the Creditors to the Second Application warranted a denial or reduction of the interim fees sought: "[I]t would appear that any alleged delay in this case is the result of the reversal of the judgment in the Creditors' favor by the Washington State Court of Appeals and continuance of the Pierce County Superior Court (State Court) jury trial by the Creditors that had been scheduled for November 29, 2016." Order Approving 2nd Appl. 2:13-17, ECF No. 229. The Court further indicated that the Creditors' complaints that the Trustee was not performing his statutory duties were not presently before the Court, nor had any evidence been provided to substantiate such allegations. The Court indicated that such concerns could be raised when the Trustee requests his statutory fee or by the Creditors properly noting these matters for hearing. The Creditors never filed such a motion.

On February 24, 2017, the Trustee and Creditors filed a stipulation assigning this matter for mediation. This mediation was once again unsuccessful and the matter went to trial in Superior Court.

On June 15, 2017, the Trustee filed a motion to modify and allow Claim No. 1, based on the fact that the jury found in favor of the Creditors and awarded $3,000,000 in damages. The Trustee sought to allow Claim No. 1 in the total amount of $3,010,748.19, which includes the $3,000,000 in damages plus a cost bill of $10,748.19. An order allowing Claim No. 1 in this amount was entered on July 11, 2017.

On August 29, 2017, the Trustee filed his Final Report, listing gross receipts of $624,879.91 and a balance on hand of $463,107.33. The Final Report provides that pursuant to § 326(a), the maximum compensation allowable to the Trustee is $31,989.45, the Trustee has received no interim compensation, and the Trustee seeks compensation in the amount of $31,989.45 and reimbursement for expenses of $803.41. The Final Report further lists the remaining balance of $430,314.44 to be paid pro rata to timely allowed general unsecured claims, of which the Creditors will receive $428,805.02. The Creditors object to the Trustee's Final Report. At the September 28, 2017 hearing, the Creditors acknowledged that the Trustee's commission is the sole matter at issue.

In the Ninth Circuit, a trustee's commission calculated under § 326 is "presumed reasonable" except in exceptional circumstances. Fear v. United States Trustee (In re Ruiz), 541 B.R. 892, 896 (9th Cir. BAP 2015). This limited inquiry is justified by the view that the statutory amount allowed to the trustee is a commission, instead of a standard fee amount subject to the lodestar analysis. Hopkins v. Asset Acceptance LLC (In re Salgado-Nava), 473 B.R. 911, 920-21 (9th Cir. BAP 2012); § 330(a)(7). "[W]e know of no reason why courts should

second-guess Congress's clearly expressed intent to fix trustee commission rates for the vast majority of cases," and "absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review." Salgado-Nava, 473 B.R. at 920-21. Although not well defined, the "extraordinary circumstances" potentially justifying a reduction in commission are those few instances where the trustee's case administration "'falls below acceptable standards or where it appears a trustee has delegated a substantial portion of his or her duties to an attorney or other professional.'" In re Rowe, 750 F.3d 392, 397 (4th Cir. 2014) (quoting 2 U.S. Trustee, Handbook for Chapter 7 Trustees Ch. 2-1, at 39 (Apr. 2012)).

The Creditors object to the Trustee's commission, contending that the Trustee failed to perform his duties in accordance with § 704(a)(1), (4), and (7), provided in relevant part as follows:

> (1) close such estate as expeditiously as is compatible with the best interests of parties in interest;
>
> (4) investigate the financial affairs of the debtor; [and]
>
> (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest.

The Creditors argue that because the Trustee breached his fiduciary duties, a denial or reduction of the commission is warranted. Specifically, the Creditors argue that the Trustee breached his duties in not acting expeditiously, failing to pursue assets, and failing to provide information.[4]

---

[4] Although the Creditors also appeared to take issue with the fees paid to Trustee's counsel in their pleadings, they clarified at the September 28, 2017 hearing that such fees are only being mentioned for purposes of examining the total fees paid in this case. Thus, the only compensation being challenged is that of the Trustee.

MEMORANDUM DECISION - 8

Initially, the Creditors have made generalized allegations that the Trustee could have acted more quickly to close this case. There is no evidence, however, that any delay in this case was the fault of the Trustee. The Creditors hold the primary claim in this case, and the damage award was overturned on appeal while the bankruptcy case was pending. At that point, the claim became unliquidated and the Trustee immediately took steps to move the case forward, including seeking court approval of a consultant (McKasy) to evaluate the claim and objecting to the claim as originally filed. This Court determined that it lacked jurisdiction to determine the claim and subsequently entered an order modifying the stay to allow the case to proceed to trial in Superior Court. The verdict and damage award were not rendered until June 2017, after which the Trustee immediately moved to allow the Creditors' claim and then approve his final report. The closing of the case was therefore entirely dependent upon the Superior Court Action, and the Creditors' allegation that any delay was the fault of the Trustee is unfounded.

The Creditors also argue that the Trustee should have been more active in attempting to settle the matter earlier. This allegation also has no basis. This case involved a three-party dispute, and the Trustee had no ability to force the other parties to settle. The record demonstrates that multiple settlement attempts were made, including three failed mediations. Unable to reach a global settlement, the parties were required to proceed to trial in Superior Court in order to determine the claim. The Creditors have failed to demonstrate that any delay in this case was attributable to the Trustee, and there is no evidence that he breached his duty under § 704(a)(1) to close this case as expeditiously as possible.

The Creditors further contend that the Trustee failed to investigate potential malpractice claims or pursue the recovery of fees paid by the Debtor for litigation services of a guardian ad

litem.  These are the same allegations raised by the Creditors to the Trustee's Second Application for Interim Fees, and once again, the Court concludes that the Creditors have failed to provide any evidence that the Trustee's determination not to pursue such assets was in error. See Order Approving 2nd Appl. 3:3-11, ECF No. 229.  The Ninth Circuit Court of Appeals (Ninth Circuit) has concluded that a bankruptcy trustee is afforded substantial discretion in performing his duties, so long as he exercises a "measure of care and diligence that an ordinary person would exercise under similar circumstances."  United States ex rel. Block v. Aldrich (In re Rigden), 795 F.2d 727, 730 (9th Cir. 1986).  This includes "business judgment" discretion to pursue only those claims that are in the best interest of the estate.  See In re Smith, 426 B.R. 435, 441 (E.D. N.Y. 2010), aff'd, 645 F.3d 186 (2nd Cir. 2011).  See also In re Marshall, No. 2:14-bk-16359-TD, 2015 WL 5735220, at *4 (Bankr. C.D. Cal. Sept. 29, 2015) (bankruptcy court rejected argument that the chapter 7 trustee breached his fiduciary duty when, exercising his business judgment, he decided not to participate in an appeal).

     In regards to the alleged malpractice claims, the Trustee has stated that he thoroughly reviewed these claims and determined in his business judgment that they were not worth pursuing.  Not only did these claims arise prepetition, but based on the Trustee's evaluation, they also arose outside of the periods for seeking to void the transactions under the Bankruptcy Code and were subject to various valid defenses.  In addition, contrary to the Creditors' allegations, the Trustee has provided evidence that the Superior Court did provide oversight of the pre-petition fees and expenditures in the guardianship proceedings.  See Trustee's Suppl. Resp. Exs. 4-5, ECF No. 249.  The Creditors were involved in these proceedings, which predated the Trustee, and there is no evidence that the Creditors made any challenges to the expenditures when reported or approved.  More importantly, the Trustee also has provided

MEMORANDUM DECISION - 10
Case 13-45569-MJH    Doc 255    Filed 10/11/17    Ent. 10/11/17 12:32:05    Pg. 10 of 14

evidence that he consulted with two legal malpractice attorneys in early 2014 and that "neither attorney opined that a viable claim for malpractice existed based upon the legal representation of Clarence Munce." Trustee's 2nd Suppl. Resp. 2:1-3, ECF No. 253. The Creditors have failed to present any evidence that the Trustee's decision not to pursue these claims was in error.

The same is true of the Trustee's decision not to pursue reimbursement of the litigation guardian ad litem fees from State Farm Insurance Company (State Farm). The Trustee did make demand from State Farm, which was denied, and then made attempts to employ special counsel to pursue this claim on a contingent fee basis, without success. The Trustee detailed his efforts to pursue this claim at length in his response. See ECF No. 247. The Trustee contacted four different attorneys to evaluate this claim and not one of them was willing to pursue it. Attorney Daniel Kyler even provided a written opinion letter, stating that it was his "opinion and recommendation that a claim not be pursued against State Farm." Trustee's Resp. Ex. 5, ECF No. 247. The Creditors' claim that the Trustee failed to investigate this claim and that "in excess of $50,000.00 could be recovered for the Estate based on very little work and little or no risk" is unsupported. Creditors' Obj. 8:6-7, ECF No. 245.

The Creditors also contend that the Trustee acted in collusion with Debtor's counsel in attempting to "aid the debtor" in exempting $167,000 in paid L&I disability funds, even though the Court ruled on May 29, 2014, that only $50,091 could be exempted. Creditors' Obj. 5:15-16, ECF No. 245. The pleadings in the record, however, reflect that in February 2014, the Trustee filed memoranda and declarations in opposition to the Debtor's Motion to Allow Exemption. See ECF Nos. 65, 66, 73, 74. Moreover, the Trustee represented in open court that while he initially understood that the funds could be exempt, additional discovery through

an employed accountant led to evidence that the L&I funds were not exempt under Washington State law. The Creditors have not presented any evidence to support their allegation.

The Creditors further contend that $6,032 paid to attorney McKasy to appraise the value of their state court claim was a waste of bankruptcy funds in light of the Court's determination that the Court lacked authority to estimate the claim. Creditors' Obj. 5:9-11, ECF No. 245. As such, they argue that the Trustee's compensation should be reduced by this amount. As stated prior, however, it was entirely proper for the Trustee to move forward with determining this claim after the damage award was reversed on appeal. On November 25, 2015, the Court approved McKasy's employment, without objection, for purposes of reviewing the value of the wrongful death judgment and proof of claim filed by the Creditors. Although the Court later determined that pursuant to 28 U.S.C. § 157(b)(2)(B), it did not have jurisdiction to estimate the claim, there is no evidence that it was improper for the Trustee to retain McKasy's services. The Trustee's actions actually moved the case forward so that the proper forum for liquidating this claim was quickly determined. Soon after the order was entered allowing the matter to proceed in Superior Court, the Trustee moved for approval of McKasy's compensation in the amount of $6,032, for services provided through January 13, 2016. The Declaration of McKasy attached to the Declaration of Ben Barcus, Ex 4 of ECF No. 246, and the time records filed in support of the application for compensation, ECF No. 185, establish that the only services performed after the Court's ruling on January 7, 2016, were 2 hours working on the report and the declaration of time. On April 1, 2016, again without objection by the Creditors or any other entity, the Court reviewed the application and approved the requested fees. There is no basis in law or fact to support the Creditors' request to reduce the Trustee's compensation by the $6,032 paid to McKasy.

Finally, the Creditors allege that the Trustee breached his duty to provide them with requested information, specifically McKasy's valuation and any documents prepared by the Trustee's CPA. These allegations are also spurious.

The Trustee is required, unless otherwise ordered by the Court, to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest . . . ." § 704(a)(7). This provision does not require the Trustee to disclose all information to every creditor, especially a party actively litigating against the estate. 6 <u>Collier on Bankruptcy</u> ¶ 704.10 (Alan N. Resnick & Henry J. Sommer, eds.,16th ed. 2017). A trustee is also not required to furnish information protected by the attorney-client privilege. See <u>In re Lee Way Holding Co.</u>, 120 B.R. 881, 907 (Bankr. S.D. Ohio 1990).

In regards to McKasy's valuation, the Creditors have failed to establish that the Trustee was under any obligation to provide this information to them or that the report would have somehow rendered the state court trial unnecessary. The Trustee sought employment of McKasy after the Washington State Court of Appeals overturned the Creditors' judgment and in preparation for further proceedings to liquidate the claims. Appl. to Employ, ECF No. 170. When the Creditors demanded disclosure of the McKasy valuation, Creditors' counsel conceded at the hearing that the Trustee had provided some information. Denying the motion without prejudice, the Court directed the Creditors to file a new motion specifying the information they still sought. No such motion was ever filed. Additionally, the Trustee indicated that he eventually provided the McKasy valuation voluntarily. Similarly, the Trustee stated on the record that he gave the Creditors everything provided by the CPA, and the Court has no reason to believe that this is not accurate. Based on the evidence before the Court, the Trustee has fulfilled his duty under § 704(a)(7).

It is undeniable that the basis for the Creditors' claim is tragic, and the relationship among all parties involved–at both the state and federal level–has been extremely acrimonious. While settlement of these claims likely would have resulted in a less expensive and quicker resolution, settlement was in fact attempted but unsuccessful on multiple occasions, through no fault of the Trustee. This case has been pending for years, and the Trustee has expended significant effort and time in fulfilling his statutory duties. The Trustee has liquidated assets totaling $624,879.91, and the Bankruptcy Code entitles him to a commission of $31,989.45. At the same time, the Creditors will be receiving $428,805.02 of the $430,314.47 available for distribution, which is an anticipated dividend of 14.2 percent. The fact that the Creditors will not be paid in full or are dissatisfied with the result is not the standard to deny the Trustee his statutory commission. Rather, the Creditors are required to establish "extraordinary circumstances" that would warrant overcoming the presumption that the Trustee's statutory fee is valid. The Creditors have failed to meet their burden, and the Court will enter an order approving the Trustee's Final Report.

/ / / End of Memorandum Decision / / /